UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------x
                                                       :
CVS PHARMACY, INC., and SURESH                         :
YARLAGADDA,                                            :
                                                       :
                    Plaintiffs,                        :     Civil Action No. 21-11526
                                                       :
              v.                                       :
                                                       :
CAPITAL RX, INC.,                                      :
                                                       :
                    Defendant.                         :
-------------------------------------------------------x
```

## **COMPLAINT**

Plaintiffs CVS Pharmacy, Inc. ("CVS"), and Dr. Suresh Yarlagadda ("Dr. Yarlagadda"), for their Complaint against Capital Rx, Inc. ("Capital Rx" or "Defendant"), allege as follows:

### **NATURE OF THE ACTION**

1. This is an action for declaratory relief and for damages based on Capital Rx's tortious interference with the relationship between CVS and Dr. Yarlagadda. Capital Rx has threatened imminent litigation against CVS, claiming that CVS wrongfully hired Dr. Yarlagadda, a former Capital Rx employee. Capital Rx claims that Dr. Yarlagadda cannot work for CVS because of a noncompetition clause (the "Noncompete Agreement") buried in a document Dr. Yarlagadda signed upon entering into employment with Capital Rx.

2. Dr. Yarlagadda is a resident of Massachusetts, who was employed by Capital Rx in Massachusetts. He signed the Noncompete Agreement in Massachusetts in or around May 2021, when he began working for Capital Rx.

3. The Noncompete Agreement is unenforceable under the Massachusetts Noncompetition Agreement Act, G.L. c. 149, § 24L.  CVS has explained this to Capital Rx, but Capital Rx has continued to threaten suit against CVS.

4. Until the Noncompete Agreement is ruled unenforceable, CVS will continue to face this threat of litigation.

5. CVS and Dr. Yarlagadda have been damaged by Capital Rx's threats, which forced CVS to postpone Dr. Yarlagadda's employment and expend resources on responding to Capital Rx.

## THE PARTIES

6. CVS Pharmacy, Inc. is a corporation formed under the laws of Rhode Island.  Its principal place of business is at One CVS Drive, Woonsocket, Rhode Island, 02895.

7. Capital Rx, Inc. is a corporation formed under the laws of Delaware.  Its principal place of business is at 228 Park Avenue South, Suite 87234, New York, New York, 10003.

8. Dr. Yarlagadda is, and at all times relevant to this action has been, a resident of Sharon, Massachusetts.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Capital Rx pursuant to G.L. c. 223A, § 3(a) because it transacted business in the Commonwealth of Massachusetts including by employing Dr. Yarlagadda and other individuals in Massachusetts.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties to this action and the matter in controversy exceeds $75,000.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to CVS's claims occurred in this District.

**FACTS**

12.     Dr. Yarlagadda was employed by Capital Rx, a start-up located in New York, New York, from on or about May 3, 2021 to on or about July 28, 2021.

13.     Dr. Yarlagadda is a resident of Sharon, Massachusetts. During the entirety of his employment with Capital Rx, he worked from his Sharon home.  Dr. Yarlagadda has never been to Capital Rx's New York office.

14.     When he was hired by Capital Rx, Dr. Yarlagadda received an offer letter (the "Offer Letter").  The Offer Letter was dated April 8, 2021 and set Dr. Yarlagadda's start date as May 3, 2021.  The Offer Letter acknowledged that Dr. Yarlagadda would be working for Capital Rx from his home in Massachusetts.

15.     Nothing in the Offer Letter contemplated that Dr. Yarlagadda would ever work in New York.  Nor did the Offer Letter contain any noncompetition provisions.

16.     On May 2, 2021, the day before Dr. Yarlagadda's employment with Capital Rx was scheduled to begin, Capital Rx sent Dr. Yarlagadda an Employee Non-Disclosure and Invention Assignment Agreement ("NDIAA").  Dr. Yarlagadda signed the NDIAA on May 2, 2021, the day he received it.  Buried within this 11-page document was a single paragraph titled "Non-Solicitation; Non-Compete".  The portion of the paragraph constituting the Noncompete Agreement reads in its entirety as follows:

> I further agree that during the term of my employment with the Company and for a period of six (6) months after the termination of my employment with the Company, I will not assist in, engage in or otherwise take a position or benefit from any business competitive with the Company, whether directly or indirectly, and whether as an owner, sole proprietor, founder, shareholder, member, partner, joint venture, officer, director, consultant, advisor, independent contractor, agent, employee, or otherwise, in the locations where the Company markets its services and products, and where I performed services and or communcaited [sic] with, directly, or indirefctly [sic] the Company's clients, or suppliers.  In addition, I may own, as a passive investor, publicly-traded securities of any business competitive with that of the Company so long as such securities do not, in the

aggregate, constitute more than three percent (3%) of any class of outstanding securities of such corporations.  For the purposes of this Agreement, a "business competitive with that of the Company" shall mean one that provides technology or services related to pharmacy benefits or pharmacy data services, excluding an operating business delivering medical insurance or medical health plans.

17. The NDIAA purports to apply New York law to any disputes arising out of the NDIAA.

18. Dr. Yarlagadda was unaware that the NDIAA contained any noncompetition provisions.

19. On or around July 28, 2021, Dr. Yarlagadda resigned his employment with Capital Rx.  He received an employment offer from CVS.  Dr. Yarlagadda was scheduled to begin work with CVS on August 9, 2021.

20. Before Dr. Yarlagadda began work with CVS, Capital Rx sent a letter to CVS and to Dr. Yarlagadda asserting that Dr. Yarlagadda was barred from working for CVS by the Noncompete Agreement.  Capital Rx stated that it "intended to hold [Dr. Yarlagadda] to the obligations set forth above" and threatened to "take any and all actions necessary to protect its rights."

21. CVS delayed Dr. Yarlagadda's start date while it investigated Capital Rx's assertions.  During this time, CVS was deprived of Dr. Yarlagadda's services, and Dr. Yarlagadda was deprived of the salary he would have received had he started work on his initial start date.

22. CVS informed Capital Rx on August 24, 2021 that the Noncompete Agreement was invalid and unenforceable under the Massachusetts Noncompetition Agreement Act.

23. Capital Rx, however, has continued to threaten litigation against CVS and Dr. Yarlagadda.  In a letter dated September 8, 2021, Capital Rx stated that CVS's employment of Dr. Yarlagadda "gives rise to a claim for tortious interference" against CVS.  Capital Rx

"demand[ed] that CVS cease and desist" and "refrain from employing" Dr. Yarlagadda until January 28, 2022.  Capital Rx threatened that if CVS did not do so, "Capital Rx will take all necessary steps to protect its rights."

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment (Both Plaintiffs)

24. CVS and Dr. Yarlagadda re-allege and incorporate by reference paragraphs 1 through 23 of this Complaint.

25. An actual and justiciable controversy exists between CVS and Capital Rx, and between Dr. Yarlagadda and Capital Rx, regarding the enforceability of Dr. Yarlagadda's Noncompete Agreement in a manner that would preclude him from working for CVS.

26. Capital Rx wrongly asserts that the Noncompete Agreement is enforceable and is threatening to bring a lawsuit against CVS unless CVS refrains from employing Dr. Yarlagadda until January 28, 2022.

27. The validity of the Noncompete Agreement is governed by the Massachusetts Noncompetition Agreement Act pursuant to G.L. c. 149, § 24L(e).

28. The Noncompete Agreement is unenforceable under the Massachusetts Noncompetition Agreement Act for several reasons.

29. For example, the Massachusetts Noncompetition Agreement Act requires that a noncompete agreement be provided to an employee by the earlier of (a) the offer of employment or (b) 10 days before the commencement of employment.  G.L. c. 149, 24L(b)(i).  The Noncompete Agreement was given by Capital Rx to Dr. Yarlagadda nearly a month after his offer of employment and only one day before his commencement of employment.

30. For another example, the Massachusetts Noncompetition Agreement Act requires that a noncompete agreement be "supported by a garden leave clause or other mutually-agreed

upon consideration" providing for compensation during the time period the employee is restricted from working for a competitor. G.L. c. 149, § 24L(b)(vii). The Noncompete Agreement contains no such clause.

31. The Massachusetts Noncompetition Agreement Act forbids evasion of its requirements through a contractual choice of law provision. The provision of the Noncompete Agreement purporting to apply New York law is invalid and void.

32. The Noncompete Agreement is otherwise unenforceable and unreasonable.

33. Unless this Court finds that the Noncompete Agreement is invalid and unenforceable, CVS will continue to suffer injury from the threat of litigation and the possibility of being deprived of Dr. Yarlagadda's services until January 28, 2022.

34. Unless this Court finds that the Noncompete Agreement is invalid and unenforceable, Dr. Yarlagadda will continued to suffer injury from the threat of litigation and the possibility of being deprived of his salary from CVS until January 28, 2022.

## SECOND CLAIM FOR RELIEF
### Tortious Interference with Contractual Relations (Both Plaintiffs)

35. CVS and Dr. Yarlagadda re-allege and incorporate by reference paragraphs 1 through 34 of this Complaint.

36. A contractual relationship existed between CVS and Dr. Yarlagadda.

37. Capital Rx knew of this contractual relationship.

38. Capital Rx intentionally interfered with this contractual relationship through improper means—specifically, by threatening litigation against CVS and Dr. Yarlagadda on the basis of the Noncompete Agreement, which it knew to be unenforceable under Massachusetts law.

39. Because of Capital Rx's actions, CVS suffered damages through the loss of Dr. Yarlagadda's services during the time that his employment with CVS was postponed.

40. Because of Capital Rx's actions, Dr. Yarlagadda suffered damages through the loss of his salary during the time that his employment with CVS was postponed.

### THIRD CLAIM FOR RELIEF
### Unfair and Deceptive Trade Practices Under G.L. c. 93A, §§ 2(a), 11 (CVS)

41. CVS re-alleges and incorporate by reference paragraphs 1 through 40 of this Complaint.

42. Capital Rx is an entity engaged in trade or commerce.

43. Capital Rx engaged in unfair and deceptive trade practices by seeking to interfere with the contractual relationship between CVS and Dr. Yarlagadda, based on the Noncompete Agreement, which it knew to be unenforceable under Massachusetts law.

44. Because of Capital Rx's actions, CVS suffered damages through the loss of Dr. Yarlagadda's services during the time that his employment with CVS was postponed.

WHEREFORE, CVS and Dr. Yarlagadda respectfully request judgment as follows:

1. Enter judgment in their favor on all claims for relief;

2. Declare that the Noncompete Agreement is invalid and unenforceable;

3. Award CVS and Dr. Yarlagadda actual damages in an amount to be determined at trial;

4. Award CVS treble damages pursuant to G.L. c. 93A, § 11;

5. Award CVS and Dr. Yarlagadda attorneys' fees, costs, and expenses in this action; and

6. Grant such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a jury trial on all claims so triable.

Dated:  September 16, 2021                FOLEY HOAG LLP

*/s/ James S. Fullmer*
James W. Bucking (BBO #558800)
  *jwb@foleyhoag.com*
James S. Fullmer (BBO #696682)
  *jfullmer@foleyhoag.com*
155 Seaport Boulevard
Boston, MA 02210
Tel:  (617) 832-1000; Fax (617) 832-7000

*Attorneys for Plaintiffs CVS Pharmacy, Inc. and Suresh Yarlagadda*